```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
_____

PAMELA L. JINES,                )
                                )
     Plaintiff,                 )
                                )
v.                              )    No. 18-1234-TMP
NANCY A. BERRYHILL,             )
ACTING COMMISSIONER OF SOCIAL   )
SECURITY,                       )
                                )
     Defendant.                 )
                                )
_____

              ORDER AFFIRMING THE COMMISSIONER'S DECISION
_____
```

Before the court is plaintiff Pamela L. Jines's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1385. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). For the reasons below, the decision is affirmed.

## I. FINDINGS OF FACT

On December 16, 2015, Jines applied for supplemental security income under Title XVI of the Act. (R. 177.) Jines alleged disability beginning on October 9, 2015, due to depression, "specific phobia," "dysthymic disorder," and "diagnosis deferred on Axis II." (R. 198; 202.) Jines's application was denied

initially and upon reconsideration by the Social Security Administration ("SSA"). (R. 110; 120.) At Jines's request, a hearing was held before an Administrative Law Judge ("ALJ") on December 12, 2017. (R. 32.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Jines was not disabled from the date the application was filed through the date of her decision. (R. 16.) At the first step, the ALJ found that Jines had not "engaged in substantial gainful activity since November 6, 2015, the alleged onset date."[1] (R. 17.) At the second step, the ALJ concluded that Jines suffers from the following severe impairments: post-traumatic stress disorder, major depressive disorder, recurrent moderate unspecified agoraphobia, anxiety disorder, and obesity. (R. 18.) At the third step, the ALJ concluded that Jines's impairments do not meet or medically equal, either alone or in the aggregate, one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18.) The ALJ had to then determine whether Jines retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Jines] has the residual functional capacity to perform

---

[1] In fact, Jines alleged disability beginning on October 9, 2015. (R. 202.)

> a full range of work at all exertion levels but with the following nonexertional limitations: She can never climb ladders, ropes or scaffolds. She cannot work with or near dangerous and moving type of equipment or machinery, moving mechanical parts and unprotected heights. She must avoid concentrated exposure to extreme cold and extreme heat. She can understand, remember and apply simple and routine instructions and tasks. She can interact frequently with supervisors, and with co-workers, and occasionally with the general public. She can maintain concentration, persistence and pace for two hours at a time over an eight-hour workday. She can adapt to infrequent changes in a work setting.

(R. 20-21.) The ALJ then found at step four that Jines had no past relevant work. (R. 25.) However, at step five the ALJ found that, considering Jines's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Jines can perform. (R. 25.) Accordingly, on April 2, 2018, the ALJ issued a decision denying Jines's request for benefits after finding that Jines was not under a disability because she retained the RFC to adjust to work that exists in significant numbers in the national economy. (R. 27.) On September 27, 2018, the SSA's Appeals Council denied Jines's request for review. (R. 1.) The ALJ's decision then became the final decision of the Commissioner. (R. 1.)

On November 21, 2018, Jines filed the instant action. Jines has two arguments: (1) the ALJ improperly evaluated her statements about the severity and nature of her symptoms and (2) the ALJ

-3-

misweighed the medical opinion evidence.

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and

background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the

ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Whether the ALJ Improperly Evaluated Jines's Statements About the Severity and Nature of Jines's Symptoms**

Jines's first argument is that the ALJ improperly evaluated her testimony at the hearing about the nature and severity of her symptoms. Jines has three contentions in support of this argument. The first is that the ALJ improperly analyzed her credibility, which Jines argues is forbidden by SSR 16-3P, 2016 WL 1119029. The second is that the ALJ focused on issues that are irrelevant to Jines's RFC in discounting her symptom severity. The third is that the ALJ's finding that Jines's statements about the nature and severity of her symptoms were not supported by the objective medical evidence was based on a mistaken interpretation of Jines's medical history.

ALJs are required to consider a claimant's testimony about the nature and severity of the claimant's symptoms. 20 C.F.R. § 416.929(a). In considering such testimony, the ALJ evaluates whether a claimant's alleged symptoms can "reasonably be accepted

as consistent with the objective medical evidence and other evidence." Id. If this is the case, the ALJ then evaluates whether the "intensity, persistence, and limiting effects of [a claimant's] symptoms. . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c).

Historically, this analysis was referred to as a credibility analysis. SSR 96-7P, 1996 WL 374186. However, following the recommendation of the Administrative Conference of the United States, in SSR 16-3P, the SSA instructed ALJs to no longer call this analysis a credibility analysis. SSR 16-3P, 2016 WL 1119029. The SSA did so for two reasons: (1) because the language "credibility" led some ALJs to inquire into impermissible considerations in conducting their analysis of claimant testimony, like a claimant's general propensity for truthfulness, and (2) because the use of the term "credibility" in framing the evaluation of symptom severity led some claimants to believe an adverse determination of credibility was an accusation of untruthfulness, undermining the perceived fairness of the disability determination process. Administrative Conference of the United States, Evaluating Subjective Symptoms in Disability Claims, 53 (2015), https://www.acus.gov/publication/evaluating-subjective-symptoms-

disability-claims. This instruction did not, however, change the underlying law requiring ALJs to evaluate alleged symptom severity in light of the evidence in the record. See Patterson v. Colvin, No. 13-CV-1040-JDB-TMP, 2016 WL 7670058, at *8 (W.D. Tenn. Dec. 16, 2016), report and recommendation adopted, No. 13-1040, 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017).

Jines understands SSR 16-3P differently. Jines asserts, or at least appears to assert, that SSR 16-3P prohibits ALJs from evaluating whether a claimant's alleged symptom severity could be reasonably accepted as consistent with the objective medical evidence. This is a mistaken understanding of the relevant law.

Jines's next contention in support of her argument against the ALJ's evaluation of her symptom severity is that the ALJ focused on issues irrelevant to her RFC. Jines says the ALJ focused on whether her statements about "pets, crocheting projects, religious attendance, or writing checks for bills" were accurate rather than evaluating the severity of her symptoms based on the evidence. (ECF No. 21.)

Jines's contention here is incorrect. Each of the specific activities the ALJ discussed was relevant to evaluating Jines's symptom severity. An example: Jines alleged that her agoraphobia made it extremely difficult for her to leave her home. (R. 44-56.)

If supported by the relevant evidence, this symptom of agoraphobia would tend to support Jines's claim of total disability because it would significantly limit her RFC. To substantiate this, Jines claimed in her testimony that she had not gone to church in years. (55-56.) If consistent with the relevant evidence, this statement would tend to substantiate the claim that Jines could not easily leave her house. But Jines's treatment notes show that Jines regularly visited a Christian community center. (R. 21-22.) This tends to show that the severity of the symptoms of Jines's agoraphobia is less than what Jines alleged. That, in turn, suggests Jines's RFC is not as limited as she alleged, which undermines her claim of total disability.

The other activities the ALJ focused on in evaluating Jines's symptom severity are relevant through similar lines of reasoning. Again and again, Jines's claims of symptom severity did not match up with the objective evidence. (R. 20-25.) The ALJ did not err in discounting Jines's claimed symptom severity as a consequence.

Jines's final contention is that the ALJ misconstrued the objective medical evidence when the ALJ found that evidence was inconsistent with Jines's claimed symptom severity. Jines claims that the ALJ went through Jines's more than a decade of treatment notes and cherry-picked unfavorable evidence. The examples of

activities inconsistent with Jines's claimed symptom severity, Jines argues, are not representative of Jines's RFC during the relevant period. Finally, Jines asserts the ALJ erred in concluding that the type of treatment she received was not consistent with her claimed symptom severity.

Jines mischaracterizes the ALJ's analysis. The ALJ did not cite evidence from more than a decade of treatment notes; the ALJ cited evidence from the treatment notes created during the relevant time period and the months closely preceding it. (R. 21-22.) As the ALJ explained, those treatment notes showed many examples of Jines engaging in activities that were not consistent with her claimed limitations. (R. 21-22.) Likewise, despite claiming to have very severe mental health symptoms, Jines never received inpatient treatment for those symptoms, and her treating therapists said her symptoms were manageable with medication. (R. 23.) An ALJ's decision about whether the objective evidence is consistent with alleged symptom severity is reviewed under the substantial evidence standard. Amir v. Comm'r of Soc. Sec., 705 F. App'x 443, 450 (6th Cir. 2017). That standard is clearly met here.

**D.  Whether the ALJ Misweighed the Medical Opinion Evidence**

Jines next argues that the ALJ misweighed the medical opinion evidence. Jines asserts the ALJ gave too much weight to Dr. Larry

Palmer, an examining physician, and too little weight to Dr. Richard Spring, another examining physician.

In formulating an RFC finding, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "An opinion from a treating physician is 'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician. A nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference." Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted). "ALJs must evaluate every medical opinion [they] receive by considering several enumerated factors, including the nature and length of the doctor's relationship with the claimant and whether the opinion is supported by medical

-13-

evidence and consistent with the rest of the record." Stacey v. Comm'r of Soc. Sec., 451 F. App'x 517, 519 (6th Cir. 2011). When an ALJ's decision rejects the opinion of a medical expert who is not a treating physician, the decision "must say enough to allow the appellate court to trace the path of [the ALJ's] reasoning." Id. (internal citation and quotation omitted).

    1.   Whether the ALJ Gave Proper Weight to Dr. Larry Palmer's Opinion

The ALJ gave great weight to Dr. Palmer's opinion that Jines had only moderate limitations from her severe impairments. (R. 24.) The ALJ gave two reasons for doing so: (1) that Dr. Palmer's opinion was "based on a thorough examination of the claimant" and (2) that Dr. Palmer's opinion was supported by the evidence in the record as a whole. (R. 24.) Jines complains that the ALJ did not explain why the ALJ believed Dr. Palmer's opinion was "based on a thorough examination of the claimant." (ECF No. 21.) Jines also complains that the ALJ did not explain why the ALJ believed Dr. Palmer's opinion was supported by the record as a whole.

In explaining the weight given to a non-treating source, the ALJ only needs to say enough to allow a reviewing court to trace the ALJ's reasoning. Stacey, 451 F. App'x at 519. That standard is met here. The phrase "thorough examination of the claimant" is self-explanatory. Furthermore, throughout the opinion, the ALJ

-14-

exhaustively described how the available evidence showed that Jines's impairments only moderately affected her RFC. The ALJ was not obliged to repeat herself in explaining the weight given to Dr. Palmer's opinion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 474 (6th Cir. 2016).

    2.   <u>Whether the ALJ Gave Proper Weight to Dr. Richard Spring's Opinion</u>

The ALJ gave little weight to Dr. Spring's opinion that Jines had a variety of marked and extreme limitations from her severe impairments. The ALJ did so for two reasons: (1) because Dr. Spring's opinion was based in part on Jines's subjective complaints and (2) because Dr. Spring's opinion was inconsistent with the record as a whole. (R. 24-25.) In explaining why Dr. Spring's opinion was inconsistent with the record as a whole, the ALJ identified four specific places where the record was inconsistent with Dr. Spring's conclusions. First, Dr. Spring concluded that Jines was unable to drive, while evidence elsewhere in the record showed Jines could drive but did not do so because of anxiety. (R. 24-25.) Second, Dr. Spring concluded that Jines would have great difficulty using public transportation, while in February 2016 Jines represented to the SSA that public transportation was her primary means of travel. (R. 24-25.) Third, Dr. Spring concluded Jines had severe recurring depression, while Jines's longstanding

treating therapists and Dr. Palmer diagnosed here with moderate depression. (R. 24-25.) Fourth and finally, Dr. Spring claimed Jines suffered from nightmares associated with her PTSD, which is not reflected in her treatment notes. (R. 24-25.)

Jines says that the ALJ should not have discounted Dr. Spring's opinion as being based in part on Jines's subjective complaints because Dr. Palmer's opinion was also based in part on Jines's subjective complaints. Jines also claims that there is no contradiction between the record and Dr. Spring's conclusions.

Turning to Jines's first contention, Jines appears to have given statements at odds with the objective evidence to both physicians. (R. 23-25.) Even assuming the ALJ erred in not discounting Dr. Palmer's opinion correspondingly, this does not help Jines. Jines bore the burden of proof before the SSA to produce evidence demonstrating her disability status. Crum v. Comm'r of Soc. Sec., 660 F. App'x 449, 454 (6th Cir. 2016). If Jines's subjective complaints of symptom severity were unreliable enough to taint all of the medical opinion evidence, then Jines failed to meet her burden.

That leaves Jines's second contention. Importantly, Jines does not dispute the most significant contradiction between Dr. Spring's opinion and the evidence in the record: that Jines's

-16-

longstanding treating therapists and Dr. Palmer diagnosed her with moderate depression, while Dr. Spring found Jines had severe and recurring depression. (R. 24-25.) Elsewhere in the opinion, the ALJ laid out exhaustive evidence supporting the contention that Jines mental impairments only created moderate limitations on her RFC. Given this, even if Jines is right on all the specific examples, the ALJ's decision is still supported by substantial evidence.

### III. CONCLUSION

For the reasons above, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham  
TU M. PHAM  
United States Magistrate Judge

September 24, 2019  
Date